J. M. MEYER, JR., *v.* THE CENTRAL NATIONAL BANK ET AL.

**Principal and Surety—Right to Fund as Against Sureties.**

> Where T., as principal, with M. and R. as sureties, executed a note
> to a bank to raise money to pay a debt to C., but as C. did not at
> the time need the money, the note was not discounted by the bank,
> but it was arranged between T. and C. and the cashier of the bank
> that the note should be held by the bank as the property of C., and
> C. afterwards sued on the note in the name of the bank and recov-
> ered judgment thereon, and used the proceeds of the note in the
> payment of his debts, C. did not violate any principle of equity or
> good morals, and is entitled to retain the money received as against
> the claim of the sureties that the judgment was obtained through
> fraud.

APPEAL FROM BOYLE CIRCUIT COURT.

January 9, 1874.

OPINION BY JUDGE LINDSAY:

The object of these actions is to recover back money paid under
mistake of fact, which was not due and payable, and which it is
claimed the party receiving cannot, in honor and conscience, retain.

The effect of the judgments and executions upon which the money
was paid is sought to be avoided upon the alleged ground that the
judgment was obtained by and through the fraduluent combination
of the two parties in this, that although the note of Turkington,
Meyer and Raines was never discounted by the bank, and never
became its property, nor binding in law upon the obligors, by
reason of the non-acceptance of the payee, yet the bank fraudulently
consented that Cecil might sue in its name, and thereby induce
appellees to suppose that the note had been accepted, and that they
were legally bound to pay it, and that the institution of the action
in the name of the bank did have the effect to deceive appellant and
prevent him from making defense.

So far as Raines is concerned, it is sufficient to say that he did not
pay the money under the impression that the bank owned the
judgment, or had ever owned the note. Before he paid anything
on the execution issued on replevin bond, the president of the bank
informed him that the bank had nothing to do with the claim, and
no power to control the execution; and as conclusive evidence on
this subject, Raines paid his proportion of the debt in a check on

the bank, which he delayed drawing for several days, for its accommodation. Now, it is clear that if the money had been going to the bank, his check would have no other effect than to transfer money deposited by him to the credit of the bank, and therefore it could not have been accommodated by the few days' delay granted at the solicitation of the president. The proof does not show that Meyer knew, at the time he paid, that Cecil was the real owner of the judgment.

It therefore becomes necessary to enquire whether, taking his own statements as true, the circumstances attending the transaction are such as forbid Cecil to retain the money. The note was executed to enable Turkington to raise money to relieve himself from financial embarrassment. The nature of this embarrassment was not explained to Meyer, nor did he enquire concerning it. He knew that it consisted of "debts to be paid." Turkington also spoke of some trade from which he could, or thought he could realize profit. How the money raised on the note was to be used, was a matter of indifference to Meyer, or rather he did not dictate to Turkington how he should use it. Now, the only debt shown to be pressing Turkington at the time was that held by Cecil, and the conclusion is almost inevitable that Turkington intended to use the money raised on the note to pay Cecil.

It turned out, however, that Cecil did not need the money at the time the note was presented to the bank; and, therefore, instead of having it discounted, it was arranged between Turkington and Cecil that it should be adjusted with the cashier of the bank and held as the property of Cecil, he, in consideration therefore, surrendering the note he then held on Turkington. If the note had been discounted as was intended, Cecil would have obtained his money, and the obligors would have been bound to pay. It was not discounted, but the object of its execution has been accomplished.

If at the time of suit, Meyer had known that the note had not been discounted by the bank, he might have defended upon the ground of its non-acceptance by the payee. If he discovered this fact within three years after judgment, he might have obtained a new trial by applying therefor in the proper manner, and might have had an injunction until his petition for a new trial was disposed of, or, if the money was paid before discovery, in case the new trial was granted and he succeeded in his defense, would have compelled restitution.

Failing to resort to either of these modes to protect his legal rights, and resorting to the chancellor for relief, he has undertaken to show fraudulent combination between the bank and Cecil, and to make out a state of case in which it would be unconscientious and dishonest for Cecil to keep the money. The fraudulent combination is not sustained by the proof. Cecil has obtained no money except that which it was intended he should have when the note was executed. It is true it has not come to him through the exact channel contemplated by the parties.

The deviation from the mode intended would have been a good ground of defense to his suit if discovered in time; but it was not; and Cecil now has the proceeds of the note, just as it was intended he should have them at the time of its execution. He resorted to no dishonest schemes, and concealed no fact about which he was bound to speak in prosecuting the collection of the debt. It may be unfortunate to appellant, Meyer, that he was not advised of a fact which would have exonerated him from paying the note; but it would have been equally unfortunate to Cecil, had he lost his debt, by reason of an innocent exchange of a note that he could collect, for one not made payable to him in person, and to which a successful defense might have been made.

We are of opinion that in retaining the money Cecil violated no principle of equity, or good morals. We do not see that appellant was prejudiced by the amended answers allowed to be filed after the trial of the causes had commenced.

It is unnecessary to examine into the exceptions to depositions, as we base our conclusions mainly upon the depositions of the two parties.

The chancellor properly dismissed the petitions, and his judgment is affirmed.

*P. B. Thompson, for appellant.*

*VanWinkle & Rodes, Durham & Jacobs, for appellees.*

